ADAMS & WESTLAKE CO. v. PETER GRAY & SONS, Inc.

(Circuit Court of Appeals, First Circuit. June 11, 1914. On Rehearing, January 6, 1915.)

No. 1054.

PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—SIGNAL LAMP.
     The Hamm patent, No. 651,782, for a signal lamp, *held* void for anticipation and lack of patentable invention.

Appeal from the District Court of the United States for the District of Massachusetts; Arthur L. Brown, Judge.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Suit in equity by the Adams & Westlake Company against Peter Gray & Sons, Incorporated. Decree for defendant, and complainant appeals. Affirmed.

For opinion below, see 206 Fed. 303.

Fredrick P. Fish, of Boston, Mass., and Louis K. Gillson, of Chicago, Ill., for appellant.

Richard P. Elliott, of Boston, Mass., for appellee.

Before PUTNAM, DODGE, and BINGHAM, Circuit Judges.

PUTNAM, Circuit Judge. This case relates to a patent, No. 651,-782, issued June 12, 1900, to William S. Hamm, on an application dated on May 16, 1898, for improvements in signal lamps. The facts of the case are so fully stated in the opinion of the District Court, passed down on July 2, 1913, 206 Fed. 303, that we have no occasion to recite them at length. Except as stated herein, we agree with that opinion that the difficulty in the alleged invention is "in finding any new principle of operation, or a result new in kind, as distinguished from an improved result due to a better and more careful application of old principles."

The leading features of the complainant's lamp relate to the prevention of sweating. This was accomplished by directing a current of incoming fresh air extending downward, so as to establish a curtain between the external globe and the current of air from the ascending products of combustion, which downward current would hold the external globe at the temperature of the external air while furnishing an upward current which would maintain combustion. There seems to be no doubt that this arrangement accomplished the purpose of preventing sweating; but the learned judge of the District Court was of the opinion that it was anticipated by the patent to Hamm, No. 592,-705, issued on October 6, 1897. His opinion said that reference was there made to sweating, quoting what that patent said, as follows:

"I have overcome this defect by constructing a lantern having a top-air admission, the air descending within the globe, and to a certain extent in contact therewith, to the bottom of the globe, and thence to the flame. Thus a current of air of the same temperature as that of the globe (which is that of the exterior air) is always in contact therewith, any deposition of moisture thereon being prevented."

This method of preventing sweating is, in principle, covered by claim 2 of patent No. 592,705, although somewhat differently expressed.

While patent No. 592,705 is elaborately considered by the respondent, and its anticipation of the patent in suit fully pointed out, we regret to say that the only reference we find to it from the appellant is an oral statement to the effect that what was shown by the earlier patent had not been in public use two years. This is true with reference to the date of the application for the patent now in suit; but the claim in patent No. 592,705 covers the ground so far as sweating is concerned, so that to maintain the present patent as to it would give the complainant an additional period beyond what the statute grants to patentees.

It is true that patent No. 592,705 was specifically for a signal hand lamp, which, however, as explained in that patent, is subject to all the liability of sweating, and consequent danger to railroad trains, pointed out in the patent now in suit. Indeed, the patentee in the prior patent stated that his invention was not restricted to hand lamps, but was adapted to other forms of signal lanterns, and that it admitted of changes in mechanical construction not involving invention, and that therefore, he did not confine his invention to any particular type of lantern, or limit himself to the precise details of construction therein contained.

We regret that this phase of the case was not more fully met by the complainant than it has been; but, on the record now before us, we are of the opinion that to sustain this appeal on account of the matter of sweating would make the invention run from 1897, instead of from the date at which the present patent issued. Battin v. Taggert, 17 How. 74, 83, 15 L. Ed. 37, applies here.

Other features of the complainant's lamp for which much importance was claimed at the argument are found in the combination described in claim 5 of the patent. They are the pocket formed above the "plate in the upper part of said casing or body" there referred to, between so much of the "internal cone" as extends above the plate, and the "outer cone" above the plate, open at the top, surrounding the "internal cone," and extending above the same, also the "cap above said outer cone." It is said that the patentee substituted for a fluted cap fitting closely over the flue, as in prior lamps, a flat open top such as Fig. 1 of the patent in suit represents, whereby the outflow of gases from the flame through the "internal cone" is not obstructed, as was formerly the case with the fluted cap, while the greater risk involved of admitting sudden gusts which might extinguish the flame is counteracted by the pocket surrounding the "internal cone," which effectually "traps" any wind gusts before they can enter the "internal cone" and reach the flame. The complainant sometimes referred to this pocket as the "wind trap."

The patent, however, nowhere so sets forth any such superiority of the cap shown in Fig. 1 over the fluted cap before used as above referred to, nor does it anywhere so describe any such trapping of wind gusts in the pocket referred to, as to indicate that the patentee regarded these features as inventions of his to secure the results now ascribed to them.

As was said in the opinion of the District Court, it was, of course, fundamental to guard against gusts that might enter and extinguish the flame, whether through the chimney or outlet for products of combustion, or from the air inlets. That opinion continued:

"So far as this feature is concerned, it may be said that the testimony that the complainant's lamp does not blow out shows merely that the entrance and exit are better guarded than other devices; and upon this question the devices of the complainant and defendant are to be compared with reference to the special structures, rather than to any novelty in principle."

We find nothing in the record which induces us to disagree with the District Court in regard to this part of the lamp, or to find, as it could

not, any new mode of operation, or patentable novelty. On the whole, while we are very much impressed by the benefits which have come to the public from what has been done by the complainant appellant, or by his patentee, we feel constrained to affirm what has been decided by the District Court.

The decree of the District Court is affirmed, and the appellee recovers its costs of appeal.

### On Rehearing.

PER CURIAM. In this case a judgment was entered for the respondent on June 11, 1914. On a petition for rehearing the court ordered the entire case reargued, and the same has been done. On full consideration of what has occurred accordingly, to which the court gave full and careful attention, we have received no impression that there was any error in our previous judgment, and we have concluded to confirm the same. It follows, therefore, that on this rehearing we re-enter our judgment as follows:

The decree of the District Court is affirmed, and the appellee recovers its costs of appeal.